UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 21-cv-22819-RKA

MEGLADON,    INC.,    a    Florida
corporation,

     Plaintiff,

v.

VILLAGE OF PINECREST, a Florida
municipal corporation,

     Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT
OR, IN THE ALTERNATIVE, TO JOIN A NECESSARY PARTY,
AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Village of Pinecrest ("Village"), through counsel and pursuant to Fed. R. Civ. P. 12(b) and 19, moves to dismiss the Complaint filed by Plaintiff, Megladon, Inc. ("Plaintiff") and attached as an Exhibit to the Notice of Removal (D.E. 1), , or, in the alternative to join Miami-Dade County ("County") as a necessary party.  As grounds for its Motion, the Village states:

**INTRODUCTION**

Plaintiff's alleges in this suit that the Village committed a Fifth Amendment "taking" when it required dedication of a portion of Plaintiff's property in exchange for a permit to construct a single-family residence on the Property.  Plaintiff filed a three-count Complaint pursuant to §70.45, Florida Statutes (prohibited exaction) and the Florida and United States Constitution (unconstitutional condition), which all rely on this one premise. Plaintiff's Complaint should be dismissed for several reasons.

First, the County has exclusive jurisdiction over the dedication, which the Village cannot ignore. Thus, the Village is not the right party to this suit.  Second, none of the claims are ripe because the Village never took a final position on the dedication requirement.  The Village was

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

1

still discussing with Plaintiff what it believed was a County dedication requirement, when Plaintiff unjustifiably ended the discussions and filed suit.  Third, if a mere written comment by the Planning Director constituted a final position by the Village concerning the dedication requirement, then Plaintiff's state claim (Count I) should be dismissed because its presuit notice was untimely. Finally, Plaintiff failed to state a claim for because the Village gave Plaintiff two options (1) comply with the County's dedication requirement or (2) seek a waiver from the County of the requirement.  The latter option does not constitute a "taking" because it is not requiring Plaintiff to give up property without payment of just compensation. As a matter of law, Plaintiff's claims, therefore, fail. Accordingly, Plaintiff's Complaint should be dismissed.

In the alternative, the County is a necessary party that should be joined in this dispute to adequately defend the dedication requirement.

## FACTUAL ALLEGATIONS IN THE COMPLAINT

1. In 2016, Plaintiff purchased the vacant residential lot located at 13100 S.W. 77th Avenue, Pinecrest ("Property"), to develop a new residence. Comp. ¶ 5.

2. Plaintiff employed a local architectural firm to prepare plans for the new residence. Comp. ¶10.

3. In December 2019, Plaintiff submitted the plans to the Village planning department for review and approval of a building permit. Comp. ¶10.

4. As part of the review process, Village staff inputs their review comments into a "Plans Review System," and the applicant (here Plaintiff) is given an opportunity to respond to the comments of Village staff through the Plans Review System.  Comp. ¶¶11-15.

5. Staff review and comments do not constitute final decisions by the Village.  Comp. ¶ 13. They are made for the purpose of informing applicants and Village council members of staff opinions concerning whether applications meet regulatory requirements. Comp. ¶ 14.

6. The Village's Plan Review System facilitates dialogue between a property owner and Village staff, providing a means of communication aimed at amicable resolution of any discrepancies or disagreements concerning the application of regulations to proposed development projects.  Comp. ¶13.

7.     On December 24, 2019, Village Zoning Department staff commented on the Plans Review System that the Public Works Director should "research possible road dedication" because the Property "has not made a road dedication to S.W. 131st Street. Comp. ¶ 16.

8.     On April 1, 2020, the Village Public Works Department staff commented on the Plans Review System: "R/W dedication required along SW 131 St. . . ." Comp. ¶ 17.

9.     On April 3, 2020, the Director of the Building and Planning Department ("Planning Director") commented on the Plans Review System that a 7.5 foot dedication of land along S.W. 131st Street was required, and that the change in property line caused by the dedication would require relocation of the proposed residence and adjustment of setbacks, lot coverage, impervious coverage, green space, and building area.  Comp. ¶19.  The comment further indicated that Plaintiff would have to execute a right of way deed and associated owner's affidavit and agreement. *Id.* The comment entered by the Planning Director on April 3 will be referred to as the "April 3 Comment."

10.     Plaintiff has not responded to or otherwise satisfied the April 3 Comment on the Plans Review System. Comp. ¶21.

11.     In order for the Village to issue a building permit, Megladon must either respond to or satisfy all comments in the Plans Review System. *Id.*

12.     On April 30, 2020, Plaintiff's designer, Valeria Fossi ("Fossi"), wrote to the Planning Director to seek clarification on the April 3 Comment. Comp. Ex. A. Fossi specifically asked:

> If there is a revision to the property line, and not just the setback, we would need to see that in an updated survey in order to update our drawings.  Is this something that the city coordinates with the surveyor, so that the clients can have the survey revised?

Comp. Ex. A.

13.     The same day that Fossi wrote the email to the Village Planning Director (April 30), the Village Planning Director and Fossi talked on the phone regarding the April 3 Comment. *Id.*

14.     On May 1, Fossi wrote to the Village Planning Director, listing the issues that were discussed in the April 30th phone call and asking the Village Planning Director to confirm that she had understood the issues correctly as follows:

As per our conversation, we would like to request confirmation on the following highlights:

-An updated survey will not be required to complete the permit process for this project.

-An updated survey will not be required to complete [sic] to begin and complete the construction of this project.

-The process of the "Road Dedication" is a process to be completed between the Owner representative and the City.

-The process of the "Road Dedication" may take months to be completed however, this process can be done simultaneously with the permitting and construction process for this property.

-The process of the "Road Dedication" must be completed before the Building Department can issue a "Certificate of Occupancy" for this property.

-An updated survey will be issued after the Road Dedication is completed.

-Revise drawings to show "proposed new property line" and "proposed new setback" as indicated by zoning comment #1.

-Revise drawings to show "cross hatch" area of future road dedication

-Relocate the proposed residence to comply with the new requirements described in the city comment above.

-Revise drawings and zoning charts to show new/ proposed lot coverage, impervious VS previous [sic] calculations, green space, and all building area information to comply with minimum requirements of the EU-1zoning district.

**Please confirm that we have understood correctly as per our call.**

Comp. Ex. A (emphasis added).

15. On May 14, the Village Planning Director responded confirming that his understanding of the phone call was the same as Fossi's. *Id.*

16. Notably, Fossi did not ask if Plaintiff could be excused from the condition, and the Village Planning Director was not responding to an inquiry on whether Plaintiff could be excused. *Id.* Nor did Fossi otherwise address the comment concerning the dedication. *Id.* The limited scope of Fossi's inquiry was whether the survey had to be revised in order to continue with the review process. *Id.* Given the question, the Planning Director responded that the survey *did not have to be revised* because the dedication process would take a long time to complete. *Id.* "In the meantime, the Village can review the application for a building permit, provided the site plan and

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

4

all required building setbacks, lot coverages, green space calculations, etc., are indicated for the property excluding the right-of-way to be dedicated." *Id.*

17.    The Village has advised Plaintiff that the dedication is a County requirement, and that Plaintiff can seek a waiver from the County concerning the condition. Comp. ¶¶35-39.

18.    Plaintiff refused to speak to the County about the dedication requirement. *Id.*

19.    Plaintiff has also not responded to the pending April 3 Comment on the Plans Review System (or, if it has, it has not alleged so).

**STANDARD OF REVIEW**

To state a claim for relief, a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8) (a) (2). "While a complaint attacked by a . . . motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations must be enough to raise a right of relief beyond a speculative level. *Id.*

Although for the purposes of a motion to dismiss the Court must take all the factual allegations in the complaint as true, the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Pure legal conclusions with no stated factual basis should be disregarded. *Id.*

Finally, a Court may take judicial notice of the local ordinances, even at the motion to dismiss stage of the proceedings. *See* Fed. R. Evid. 201 (b) (2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Vazzo v. City of Tampa*, No. 8:17-CV-2896-T-36AAS, 2018 WL 4610998, at *2 (M.D. Fla. Mar. 15, 2018)("Ordinances that are central to a case are judicially noticeable."); *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006)("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment . . . . Public records are among the permissible facts that a district court may consider."); *Roberto v. Shendell & Assocs., P.A.*, No. 9:17-CV-81213, 2018 WL 1367445, at *1 (S.D. Fla. Mar. 16, 2018) ("On a motion to dismiss, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment.").

**ARGUMENT**

**I.      The County Has Exclusive Jurisdiction over the Dedication, and thus the Plaintiff Failed to State a Claim Against the Village.**

The "taking" on which Plaintiff's claims are based is the requirement that Plaintiff dedicate a portion of its Property that is adjacent to SW 131st Street for roadway purposes.  Although the Village was the entity that advised Plaintiff of the dedication requirement, it is the County (not the Village) that requires the dedication. Comp. ¶¶35-39.  Plaintiff admits that the Village told Plaintiff that the dedication requirement is a County requirement and, that it could seek to have the requirement waived by the County.  *Id.*  Without stating a factual or legal basis for its conclusion, Plaintiff alleges that it did not seek a waiver because the "County has no jurisdiction." Comp. ¶39. Plaintiff's legal conclusion concerning the County's jurisdiction, whether right or wrong, should be disregarded for purposes of determining whether the Complaint states a claim.  *Papasan*, 478 U.S. at 286.  Nevertheless, the Court should note that Plaintiff's legal conclusion is, in fact, incorrect.  The County has exclusive jurisdiction to require dedication, and the Village cannot ignore the County's jurisdiction. Because the County has exclusive jurisdiction over the dedication requirement, Plaintiff failed to state a claim against the Village.

A.  The County Has Exclusive Jurisdiction over the Dedication.

The Florida Supreme Court has noted that the Miami-Dade County Home Rule Charter only provides for municipal autonomy as to purely local functions and authorizes "regulation and control by the Board on a county-wide basis of those municipal function and services that are susceptible to, and could be most effectively carried on under, a uniform plan of regulation applicable to the county as a whole."  *Miami Shores Village v. Cowart*, 108 So. 2d 468, 472 (Fla. 1958).  Relying on *Cowart*, the Third District Court of Appeal explicitly held that, in Miami-Dade County, "by ordinance under the Home Rule Charter, the County has undertaken, by master plan, the control of traffic both in the unincorporated and incorporated areas of the County." *A. L. Lewis Elementary Sch. v. Metro. Dade Cty.*, 376 So. 2d 32, 34 (Fla. 3d DCA 1979).  Thus, the County has exclusive jurisdiction over traffic control and enforcement issues in all incorporated and unincorporated areas of the County.  *Id.*; *see also* Chapter 2, Art. XIII, § 2-95.1 County Code (noting that the County has "exclusive jurisdiction" over traffic and roadway regulations).

It is unsurprising such exclusive jurisdiction lies with the County, because if each municipality were able to choose what their roads looked like and how they operate, there would be pandemonium in the County. The Florida Supreme Court has noted that "[i]t is difficult to imagine a field in which a central metropolitan government could more effectively function than in that of removing the confusion, inequalities, and inequities resulting from a multiplicity of independent municipal ordinances governing the control of traffic . . . in highly congested and contiguous metropolitan areas. *Cowart*, 108 So. 2d at 473.

Section 1.01 (A) (1) of the County Charter vests the Board of County Commissioners ("Board") with the power to "provide and regulate arterial, toll and other roads, bridges, tunnels . . . for control of traffic . . . ." The Board delegated its power concerning the regulation of road and traffic to the County's Traffic and Transportation Department. Chapter 2, Art. XIII, § 2-95.1, County Code. The Traffic and Transportation Department has "exclusive jurisdiction" in the entire County over "all matters of traffic engineering," which means "that phase of engineering which deals with the planning and geometric design of streets, highways, roads, alleys and other places used for travel or parking of motor vehicles, and abutting lands, and with traffic operation thereon, as the use thereof is related to the safe, convenient, economical and feasible transportation of persons and goods." Chapter 2, Art. XIII, § 2-95.1(d), County Code. Within the County's territorial area, the Traffic and Transportation Department's jurisdiction is only subordinate to the State road department's jurisdiction on state highways. *Id.* Chapter 2, Art. XIII, § 2-96.1, County Code, further states that "all traffic engineering services shall be performed by the County's traffic and transportation department, and such department . . . shall have exclusive jurisdiction to exercise the power, duties and functions set forth in [section 2-96.1]." The County's jurisdiction over traffic engineering within its territorial limits is exclusive.

The County Comprehensive Plan, which "acts as a constitution for all future development within the governmental boundary," *Payne v. City of Miami*, 52 So. 3d 707, 737 (Fla. 3d DCA 2010), requires the County to maintain a minimum rights of way established by the Public Works Manual and to require dedication to meet those standards. The County Comprehensive Plan Transportation Element specifies, "traffic circulation needs and the goal in this Subelement are presented for the entire County, including the 34 municipalities." Objective TC-2 of the Traffic Circulation subelement states, "the rights-of-way and corridors needed for existing and future

transportation facilities will be designated and reserved." Policy TC-2B further provides that "[t]he County shall require the dedication of appropriate share of all necessary rights-of-way from all developments at the time of development." Policy TC-2A of the Traffic Circulation subelement requires that the County "maintain and enforce the minimum right-of-way requirements established in the Public Works Manual . . . to ensure Countywide continuity of the thoroughfare system."

The County Public Works Department is required to "[p]romulgate, establish and enforce minimum standards for public works construction by the publication of a public works manual." Chapter 2, Art. XIV, § 2-100(d), County Code. The Public Works Manual is the official guide for all public works throughout the County and is applicable in both the incorporated and unincorporated areas of the County. §2-100(d), County Code. The Public Works Department Director may grant a variance from the Public Works Manual standards "where such variance will not nullify the intent and purpose of the standards to provide uniform construction requirements for the protection and safety of the general public." Thus, the process for obtaining a variance is simple and involves one County official – the Director of Public Works.

The County Code and County Comprehensive plan show that the County has exclusive jurisdiction over the design of the roads in the entire County, that the County must require dedication of appropriate share of all necessary rights-of-way from all developments in the County, and that the County must "maintain and enforce" the minimum rights of way requirements in the public works manual. *See Lewis Elementary Sch.*, 376 So. 2d at 34 (noting that "under the Home Rule Charter, the County has undertaken, by master plan, the control of traffic both in the unincorporated and incorporated areas of the County"). Plaintiff's own allegations state that the Village advised Plaintiff that the County was requiring the dedication to meet the standards in the County Public Works Manual. Comp. ¶35. Thus, Plaintiff's legal conclusion that the County has no jurisdiction should not only be disregarded because it is a legal conclusion and not a factual allegation, it should also be disregarded because it is plainly incorrect. The County has exclusive jurisdiction over the dedication.

B.      The Village Cannot Disregard the County's Exclusive Jurisdiction and Authority to Exact Road Right of Ways from Developers When Issuing Building Permits.

The Village Code does not require that Plaintiff dedicate property for roadway purposes in order to develop a single-family home.  Comp. ¶ 31.  The Village Comprehensive Plan and Village Code, however, mandate that the Village coordinate all development applications with other regulatory authorities that have jurisdiction over the applications.  The Village, therefore, must coordinate with the County and communicate the County's dedication requirements to the applicant.

The Village comprehensive plan, just like the County's, act as a constitution for all future development within its boundaries.  *Payne*, 52 So. 3d at 737. Thus, all future development in the Village must be consistent with the Village Comprehensive Plan.  *Id.* The Land Use Element of the Village Comprehensive Plan contains Objective 1-1.4, which states that the Village "shall ensure that needed public services and facilities are developed concurrent with new development." Policy 1-1.4.3, of that same objective, states that "[p]rior to receiving a development permit, the applicant's plans must incorporate necessary . . . off-site improvements or equitable contributions in lieu thereof which are required as part of a development application pursuant to the Comprehensive Plan or any other requirement of the Village or applicable laws . . ., as exist or may hereinafter be amended."

The Village Code requires that development approvals for single-family dwellings, such as the one proposed by Plaintiff, be reviewed and acted upon by the Village administrative official. Chapter 30, Article 3, Div. 3.2(B) (1), Village Code.  The administrative official for the Village that was delegated the responsibility to review and act upon development approvals is the Village Planning Director. Comp. ¶52. The administrative official must take action on a proposed development based on the criteria for site plan approval contained in division 3.4 of the land development code.  Chapter 30, Article 3, Div. 3.2(a).  Division 3.4, subsection (h) provides, among other things that

> Except as may otherwise be required by law or administrative procedures, all required county, regional, state or federal agency approvals shall be obtained prior to the submission of an application for site plan review. In cases where intergovernmental coordination efforts are incomplete, the applicant shall provide evidence of good faith efforts towards resolving intergovernmental coordination issues.

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

9

Thus, the Village is required to account for compliance with county approvals that are needed for a development. *Id.*  The County has exclusive authority and jurisdiction to require dedication, and the Village cannot ignore or circumvent the County's authority and jurisdiction.   Moreover, Plaintiff has not alleged that it met the requirement that it show compliance with the dedication comment input by Village staff into the Plans Review System or that it indicated "evidence of good faith efforts toward resolving intergovernmental coordination issues." To the contrary, Plaintiff admits it just refused to address the issue because it incorrectly concluded that the County does not have jurisdiction. Comp. ¶¶35-39.

C.      Because the Village Has No Control Over the Dedication Requirement, Plaintiff has Failed to State a Claim Against the Village.

All three counts of the Complaint require that the suit be filed under the entity imposing the condition.  *See* §70.45, Fla. Stat. (defining "prohibited exaction" as a condition imposed by a governmental entity, and stating that notice must be provided to "the relevant governmental entity"); *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994) (finding that an unconstitutional conditions claim under the Fifth Amendment of the United States Constitution is premised on the concept that the government may not require a person to give up a constitutional right in exchange for a discretionary benefit conferred by the government); *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 949 (11th Cir. 2018) ("[b]ecause Florida follows federal takings law, we can look to cases brought under the Fifth Amendment to inform our analysis."). Instead, Plaintiff has filed suit against a mere messenger of the condition – the Village. The Village has no control over the County's requirement, and, therefore cannot waive it.  Thus, this case was improperly filed against the Village and should be dismissed.

II.      **Plaintiff's Claims Are Not Ripe Because the Village Did Not Reach a Final Decision Regarding the Dedication Requirement.**

Plaintiff state claim (Count I, pursuant to §70.45, Fla. Stat.) and Plaintiff's constitutional claims (Counts II and III, pursuant to the Florida and United States Constitution) are not ripe for the same reason: Plaintiff never reached a final decision regarding the dedication, and all three counts require a final decision for the claims to be ripe.  The state claim and constitutional claims will be addressed separately since the standard for each is slightly different.

A.     Plaintiff's State Claim (Count I) Is Not Ripe Pursuant to the Plain Language of §70.45, Fla. Stat.

Section 70.45(2), Florida Statutes, provides that an action to recover damages "may not be brought until a prohibited exaction is ***actually imposed or required in writing as a final condition of approval*** for the requested use of real property" (emphasis added). Plaintiff alleges in the Complaint that its claim is ripe because, in an email attached as Exhibit A to the Complaint, the Village Planning Director refused to further process its permit application unless Plaintiff modified its site plan to account for the dedication. Comp. ¶23. This allegation, however, is contradicted by (1) the very exhibit Plaintiff cites to support it and (2) by the allegations in the Complaint indicating that Plaintiff was advised that this was a ***County requirement*** that could be waived, and that Plaintiff should seek to be excused from the condition by the ***County***.

First, Exhibit A to the Complaint does not support Plaintiff's contention that the Planning Director, via an email, refused to further process Plaintiff's application unless Plaintiff showed the dedication on its site plan. When read in its entirety, the email attached as Exhibit A shows that Plaintiff is taking the Planning Director's email completely out of context to misrepresent that its claim has ripened. The email chain begins with a question from Fossi, Plaintiff's designer, asking whether the survey for the Property has to be revised to exclude the proposed dedication in order to continue with the review process. *Id.* Fossi did not ask if Plaintiff could be excused from the condition or if the condition could be modified, thus the Village Planning Director was not responding to such an inquiry. *Id.* Moreover, Fossi did not otherwise address the pending comment in the Plans Review System concerning the dedication to indicate either compliance or some other response. *Id.* The limited scope of Fossi's inquiry was whether the survey (not the site plan) had to be revised in order to continue with the review process. *Id.* Given the question, the Planning Director responded that ***the survey did not have to be revised*** because the dedication process would take a long time to complete and would hold up the site plan review. *Id.* To not hold up the site plan review, the Planning Director advised that "[i]n the meantime, the Village can review the application for a building permit, provided the site plan and all required building setbacks, lot coverages, green space calculations, etc., are indicated for the property excluding the right-of-way to be dedicated." *Id.*

At no point in time was the Village Director asked if the site plan review process could proceed without the dedication.  Therefore, the response to Fossi's email was not a refusal to continue processing the application absent a showing of dedication.  Moreover, Plaintiff admits in its allegations that the official method of processing Village comments and the developer's responses to those comments is through the Plans Review System. Comp. ¶¶12-15. Plaintiff should not be permitted to use an email conversation, outside of the Plans Review System, that concerns the survey for the property (not the propriety of the dedication requirement or the site plan) to essentially assert that the Planning Director had ended the review process.  Given that the Village Planning Director did not actually refuse to continue processing the site plan and that there is still a pending comment in the Plans Review System, Plaintiff cannot claim that the Village has actually imposed or required the dedication as a final condition of approval.

Second, Plaintiff admits that the Village advised it that the dedication was a County requirement and that it should seek to be exempt from the requirement by the County. Comp. ¶¶35-39.  If the Village Planning Director's email were, in fact, a final decision, why did the Village then encourage Plaintiff to request an exemption from the County? The Village plainly has not made a final decision because (1) it was not the Village's decision (it was the County's) and (2) the Village advised Plaintiff to seek an exemption.  This is not by any stretch of the imagination the actual imposition of a final condition of approval.

Section 70.45, Florida Statutes, provides a limited waiver of sovereign immunity for actions authorized under the section.  §70.45 (6), Fla. Stat. ("To ensure that courts may assess damages for claims filed under this section . . . the state, for itself and its agencies or political subdivisions, waives sovereign immunity . . .  Such waiver is limited only to actions brought under this section.").  Statutes that waive sovereign immunity must be strictly construed in favor of the government.  *See generally Bair v. City of Clearwater*, 196 So. 3d 577, 582 (Fla. 2d DCA 2016).  Section 70.45(2), Florida Statutes, permits a property owner to file suit only when a prohibited exaction is "actually imposed or required in writing as a final condition of approval  . . .." The word "actually" modifies a verb to indicate that it was "in fact" taking place. *McLeod v. State*, 801 N.Y.S.2d 778 * 3 (Ct. Cl. 2005); *see also State v. Langston*, 708 S.W.2d 830, 832 (Tenn. 1986) ("the phrase 'sentence actually imposed' was meant to clarify that the potential sentence that could be imposed under statute should not be considered."). Given that the allegations in the Complaint

do not show that the dedication was in fact imposed as a final condition of approval, Count I must be dismissed.

B.     Plaintiff's Constitutional Claims (Counts II and II) Are Not Ripe because the Village Did Not Commit to a Definitive Position**.**

Plaintiff's unconstitutional conditions claims (Counts II and III) under the Florida and United States Constitutions are brought pursuant to the Takings Clause. Plaintiff contends that the requirement that it dedicate land for road purposes in order to obtain a permit to develop the Property constitutes an unconstitutional condition under the Florida and United States Constitution because it requires the dedication of land without payment of just compensation as guaranteed by the Takings Clause.[1] *Koontz*, 570 U.S. at 607 (2013). All claims under the Takings Clause, however, are subject to a finality requirement, which Plaintiff has not met. *Pakdel v. City & County of San Francisco, California*, 141 S. Ct. 2226, 2228 (2021) ("When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a "final" decision.").

Specifically, for a takings claim to be ripe, Plaintiff is required to show that the government has committed to a "definitive position regarding how it will apply the regulations at issue to the particular land in question." *Williamson County Reg. Planning Com'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 191 (1985), *rev'd on other grounds*, *Knick v. Township of Scott Pennsylvania*, 139 S. Ct. 2162, 2167-2168, 2179 (2019). "[T]he finality requirement is concerned with whether the initial decision maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury. . . ." *Id.* at 193. The underlying reasoning for the finality requirement is that a property owner claiming that the application of a government regulation to its property has resulted in a taking "must prove that the government 'regulation has gone too far'" thus "the court must first 'kno[w] how far the regulation goes.'" *Pakdel*, 141 S. Ct. at 2230. A government decision is final only when "the government is committed to a position." *Id.*

---

[1]     The Florida constitutional claim and the United States constitutional claim follow the same standards, and will therefore be analyzed together.  Additionally, the Eleventh Circuit has found that "[b]ecause Florida follows federal takings law, we can look to cases brought under the Fifth Amendment to inform our analysis." *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 949 (11th Cir. 2018).

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

As discussed in Section II.A above, the Village has not committed to a final position.  The Village Planning Director never refused to further process Plaintiff's application, and the Complaint clearly states that the Village gave Plaintiff the option of seeking a waiver of the dedication requirement from the County, which is the entity that required the dedication to begin with.  Plaintiff refused.

Unless Plaintiff is claiming that the mere condition that Plaintiff speak to the County about the dedication requirement constitutes an unconstitutional condition (which it cannot as further explained in Section III below), then Plaintiff's claims must be dismissed because the Village clearly has not committed to a definitive position.  Part of the rationale for the finality/ripeness requirement is that Court's should not be answering hypothetical questions about potential, unrealized harms.  *Pakdel v. City & County of San Francisco, California*, 141 S. Ct. 2226, 2230 (2021) ("The requirement ensures that a plaintiff has actually 'been injured by the Government's action' and is not prematurely suing over a hypothetical harm.").  The premature claims that Plaintiff has raised are the very definition of hypothetical given the option it has to be excused from the requirement.  Accordingly, Counts II and III should be dismissed.

**III.     If the Plaintiff's Claims Ripened by Virtue of a Mere Written Comment by the Village Planning Director, as Plaintiff alleges, then Count I of Plaintiff's Complaint Should Still Be Dismissed Because Plaintiff's Statutory Presuit Notice Is Untimely.**

Plaintiff wants to claim that a mere written comment by the Planning Director in an email sent outside of the Village's official system for providing comments on permit applications (i.e., the Plans Review System) "actually imposed" the dedication requirement as a final condition of approval.  One of the many obvious flaws in Plaintiff's contention that this email ripened its claim is that Plaintiff alleges three previous instances in which the Village advised Plaintiff of the dedication requirement via the Plans Review System.  Plaintiff does not explain why it contends that those previous written comments do not constitute a final decision on the dedication, but the email from the Planning Director does.

Before the Planning Director sent the email attached as Exhibit A to the Complaint, there were three instances in which Plaintiff alleges the Village communicated the dedication requirement to Plaintiff:

> 1.      **December 24, 2019:** Village staff input a comment in the Plans Review System indicating that the possibility of a road dedication must be researched (Comp. ¶16);

2.      **April 1, 2020:**  a Village staff member input a comment in the Plans Review System definitively stating that right of way dedication is required along S.W. 131 Street" (Compl. ¶17); and

3.      **April 3, 2020:** the Village Planning Director entered a comment in the Plans Review System stating that a 7.5 foot dedication of land along S.W. 131st Street was required, and that the change in the Property line would require redesigning aspects of the architectural plans to accommodate the dedication (Comp. ¶ 19).

The April 3 Comment in the plans review system was clear and unequivocal: a dedication was required that would result in significant changes to the proposed site plan. In fact, the April 3 Comment does not differ in any material sense from the Village Planning Director's email attached as Exhibit A to the Complaint. The April 3 comment was input by the Planning Director, it advised Plaintiff of the full extent of the dedication required (7.5 feet), and it required redesign of the site plan to accommodate the dedication.  This is exactly what the email attached to Exhibit A does. Yet, Plaintiff advocates that the subsequent May 14, 2020, email from the Planning Director attached as Exhibit A to the Complaint, which merely reiterated the April 3 comment, "actually imposed or required the condition in writing as a final condition of approval."  Plaintiff's seemingly arbitrary choice of the event that ripened the claim is not so arbitrary.  In fact, it is clear that Plaintiff is purposefully attempting to avoid its failure to provide timely presuit notice under section 70.45(3).

Section 70.45(3) requires that a property owner who seeks to make a claim under the statute must send a presuit notice to the government "no later than 180 days after imposition of the prohibited exaction . . . ."  Plaintiff's notice was sent on October 2, 2020. Comp. Ex. B. If the April 3 comment "actually imposed" the dedication requirement, Plaintiff's presuit notice had to be sent on or before September 30, 2020. Thus, Plaintiff's presuit notice would be untimely, and its lawsuit barred.  Because the April 3 review comment, which clearly stated that dedication was required and even specified the extent of the required dedication (Comp. ¶19) would result in the claim being barred, Plaintiff proposes that a different event "actually imposed" the condition – the subsequent email from the Planning Director.  However, there is no distinction between the April 3 Comment in the Plans Review System and the Planning Director's email, and Plaintiff cannot choose which event ripens its claim.  Accordingly, assuming Plaintiff is correct that a mere written comment by the Village Planning Director can ripen Plaintiff's claim, the claim still fails because

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

15

the first written comment by the Planning Director regarding the dedication requirement was on April 3, and the presuit notice is, therefore, untimely.

**IV.      Plaintiff Failed, As a Matter of Law to Allege the Imposition of a Prohibited Exaction (Count I) or Unconstitutional Condition (Counts II and III), because Plaintiff Was Given One Option that Does Not Constitute Either.**

The Village told Plaintiff that the dedication was a County requirement and that Plaintiff should speak to the County about waiving the requirement.  Comp. ¶¶35-39.  Plaintiff clearly alleges this fact.  "[S]o long as a permitting authority offers the landowner at least one alternative that would satisfy [the essential nexus and rough proportionality test]*, the landowner has not been subjected to an unconstitutional condition." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 611 (2013).  The mere requirement that Plaintiff speak to the County about the dedication requirement does not, as a matter of law, constitute a prohibited exaction or unconstitutional condition.  Accordingly, both Plaintiff's state law claim (Count I) and its constitutional claims (Counts II and II) should be dismissed for failure to state a claim.

A.      Plaintiff Failed to State a Claim under Section 70.45, Florida Statutes.

Count I of the Complaint is based on Section 70.45, Fla. Stat., which allows a property owner to file suit and recover damages for a prohibited exaction.  A "prohibited exaction" is "any condition imposed by a governmental entity on a property owner's proposed use of real property that lacks an essential nexus to a legitimate public purpose and is not roughly proportionate to the impacts of the proposed use that the governmental entity seeks to avoid, minimize, or mitigate." The Act defines a prohibited exaction consistent with the U.S. Supreme Court definition for an unconstitutional condition because the Act's intent is to create a state cause of action for unconstitutional conditions.  Fla. H.R. Final Bill Analysis, CS for CS for CS for HB 383 (June 17, 2015),   https://trackbill.com/s3/bills/FL/2021/HB/383/analyses/bill-analysis-early-learning-and-elementary-education-subcommittee-post-meeting.pdf .

There are no Florida cases interpreting the Act because it is a fairly new law that was enacted in 2015.  Thus, federal cases can be used as persuasive authority for interpreting the Act. *See Gleneagle Ship Mgmt. Co. v. Leondakos*, 602 So. 2d 1282, 1283–84 (Fla. 1992) ("Although the Federal Rules of Civil Procedure and the Florida Rules of Civil Procedure differ in some respects, "the objective in promulgating the Florida rules has been to harmonize our rules with the

federal rules" . .  Thus, we look to the federal rules and decisions for guidance in interpreting Florida Civil Procedure Rules."); *Chmielewski*, 890 F.3d 9 at 949 ("Because Florida follows federal takings law, we can look to cases brought under the Fifth Amendment to inform our analysis.").

The United States Supreme Court has found in "unconstitutional conditions" cases that "so long as a permitting authority offers the landowner at least one alternative that would satisfy [the essential nexus and rough proportionality test], the landowner has not been subjected to an unconstitutional condition." *Koontz*, 570 U.S. at 611.  Plaintiff clearly alleged that the Village gave it the option of seeking to be exempt from the condition altogether by obtaining a waiver from the County. Thus, the Village has not exacted anything from Plaintiff. Moreover, the whole reason that a "prohibited exaction" is compensable is that "extortionate demands for property in the land-use permitting context run afoul of the Takings Clause not because they take property but because they impermissibly burden the right not to have property taken without just compensation . . .." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013). In other words, to constitute an unconstitutional condition, the permit condition must require that a property owner give up property in exchange for a permit without payment of just compensation. *See id.*  The Village's request that Plaintiff approach the County about being excused from the dedication requirement as an alternative to dedication gives Plaintiff an option pursuant to which it would give up no property interest.  This cannot as matter of law constitute a prohibited exaction. Plaintiff has therefore failed to state a claim, and the Complaint should be dismissed.

> B.    Plaintiff Failed to State a Claim under the Florida and United States Constitutions.

For same reasons cited in section III.A. above, as a matter of law, the Village's suggestion that Plaintiff seek a waiver from the County is not an unconstitutional condition.  Therefore, Plaintiff failed to state a claim, and Counts II and III should be dismissed.

**V.    At a Minimum, Plaintiff Should Be Required to Join the County as a Necessary Party.**

The County should be joined as a "necessary" party pursuant to Rule 19.  Under Rule 19(a), a party is "necessary" if:

> (A)   in that person's absence, the court cannot accord complete relief among existing parties; or

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

17

(B)      that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

>    (i) as a practical matter impair or impede the person's ability to protect the interest; or
>    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19 (a); *Santiago v. Honeywell Int'l, Inc.*, 768 F. App'x 1000, 1004 (11th Cir. 2019) (explaining when "[a] person is a required party—or a necessary party" under Rule 19(a)).

In analyzing whether a party is "required" under Rule 19(a), "pragmatic concerns, especially the effect on the parties and the litigation, control." *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982) (citation and quotation omitted). If a party is "necessary" under Rule 19(a), but "has not been joined as required, the court must order that the person be made a party." Fed. R. Civ. P. 19 (a) (2).

Here, the County is clearly a "necessary" party under Rule 19(a) (1) (A). First, without the addition of the County, the Court "cannot accord complete relief among existing parties." This is so because Plaintiff asks this Court to enjoin the Village from "demanding any right of way dedication as a condition of processing Plaintiff's application for building permit and/or as a condition of final building permit and/or certificate of occupancy." Comp. ¶¶ 61, 71, 81. As noted in Section I *supra*, however, this dedication requirement has been set forth by the County, *not* the Village. Thus, to afford Plaintiff its requested relief, the Court must order the County (not the Village) to either (1) grant Plaintiff a waiver or (2) not enforce the dedication requirement altogether.

Relatedly, the County is a "required" party under Rule 19(a) (1) (B) because the County "claims an interest relating to the subject of the action"—the applicability and enforceability of its own dedication requirement—and the County's absence would "impede the [County's] ability to protect [its] interest." *See Davis v. Day & Zimmermann NPS, Inc.*, No. CV-11-S-3738-NE, 2012 WL 1885165, at *6 (N.D. Ala. May 17, 2012) (noting that a governmental agency is a "required" party under Rule 19(a) because it "unquestionably has an interest in enforcing its own regulations.").

Accordingly, the County is a "required" party under Rule 19(a).  The Court, therefore, "must order that the County be made a party."  Fed. R. Civ. P. 19(a) (2).

## CONCLUSION

Plaintiff has filed this lawsuit against the wrong party, before any dedication was actually imposed as a final condition of approval for its permit application.  Plaintiff's Complaint makes clear that the Village provided Plaintiff with an alternative (a waiver from the County) that did not constitute a prohibited exaction or an unconstitutional condition.  Thus, the Complaint should be dismissed. In the alternative, Plaintiff should be required to join the County as a necessary party.

WHEREFORE, Defendant, Village of Pinecrest, respectfully requests that the Court dismiss the Complaint and grant the Village such other and further relief as the Court deems just and property, including attorneys' fees pursuant to section 70.45, Florida Statutes and 42 U.S.C. §1988, if the Complaint is dismissed with prejudice.

## CERTIFICATE OF SERVICE

I certify that the foregoing was electronically filed in this action on August 29, 2021, through CM/ECF and that the Portal was used as a means to serve the e-filed document upon all counsel and parties on the e-service list associated with this action.

Respectfully submitted,

**WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.**
*Counsel for Village of Pinecrest*
2525 Ponce de Leon Blvd, Suite 700
Coral Gables, Florida 33134
Telephone: (305) 854-0800
Telecopier: (305) 854-2323

By: */s/Alicia Gonzalez*
ERIC L. STETTIN
Florida Bar No. 0831697
Primary email: estettin@wsh-law.com
Secondary email: skosto@wsh-law.com
ALICIA GONZALEZ
Florida Bar No. 75342
agonzalez@wsh-law.com (primary)
ozuniga@wsh-law.com secondary)
CHARLES M. GARABEDIAN
Florida Bar No. 1000974
cgarabedian@wsh-law.com  (primary)

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

19

isevilla@wsh-law.com (secondary)