UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 21-cv-22819-RKA

MEGLADON, INC., a Florida
corporation,

      Plaintiff,

v.

VILLAGE OF PINECREST, a Florida
municipal corporation, and MIAMI-
DADE COUNTY, a political
subdivision of the State of Florida,

      Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendants, Village of Pinecrest ("Village") and Miami-Dade County ("County," collectively "Defendants"), through counsel and pursuant to Fed. R. Civ. P. 12(b) and 19, move to dismiss the Second Amended Complaint (the "Complaint") filed by Plaintiff, Megladon, Inc. ("Plaintiff") (D.E. 77).  As grounds for the Motion, the Defendants state:

## INTRODUCTION

Plaintiff alleges in this suit that the Village committed a Fifth Amendment "taking" when it requested a dedication of a portion of Plaintiff's property in exchange for a permit to construct a single-family residence on the Property. Plaintiff has refused to acknowledge that the County exercises jurisdiction over right-of-way widths, configurations, and dedication and, of particular significance to this case, over modifications or waivers of such requirements.  Because the Court allowed the County to intervene, Plaintiff has now asserted one alternative claim against the County pursuant to Section 1983 for a taking.

Plaintiff's Second Amended Complaint contains four counts: one pursuant to §70.45, Florida Statutes (prohibited exaction, against the Village) and three pursuant to the Florida and United States Constitutions (unconstitutional condition, against the Village and the County). All four counts rely on the same premise: that the dedication requirement as a condition to obtain a permit has effected a taking. Plaintiff's Complaint should be dismissed for several reasons.

First, the County exercises jurisdiction over right-of-way widths, configurations, and dedications, to which the Village is subject. Thus, although the Village is the permitting authority over the specific building permit at issue in this case, it is not the only necessary party to this suit.

Second, none of the claims are ripe because the Village and the County never took a final position on the dedication requirement.  The Village was still discussing with Plaintiff what it believed was a County dedication requirement, when Plaintiff unjustifiably ended the discussions and filed suit.  Moreover, Plaintiff never even approached the County or submitted any type of application to the County to be excused from the dedication requirement.

Third, if a mere written comment by the Planning Director constituted a final position by the Village concerning the dedication requirement, then Plaintiff's state claim (Count I) should be dismissed because its presuit notice was untimely.

Finally, Plaintiff failed to state a claim because the Village gave Plaintiff two options: (1) comply with the County's dedication requirement or (2) seek a waiver from the County of the requirement.  The latter option does not constitute a "taking" because it is not requiring Plaintiff

to give up property without payment of just compensation. As a matter of law, Plaintiff's claims, therefore, fail. Accordingly, Plaintiff's Complaint should be dismissed.

### FACTUAL ALLEGATIONS IN THE COMPLAINT

1. In 2016, Plaintiff purchased the vacant residential lot located at 13100 S.W. 77th Avenue, Pinecrest ("Property"), to develop a new residence. Second Am. Comp. ("Comp.") ¶¶ 2-3.

2. In December 2019, Plaintiff submitted a building permit application to the Village for construction of a single-family home on the Property. Comp. ¶¶ 30, 32.

3. On December 24, 2019, the Village Zoning Department staff commented on the Plans Review System that the Public Works Director should "research possible road dedication" because the Property "has not made a road dedication to S.W. 131st Street." Comp. ¶71.

4. In or about February 2020, Plaintiff requested a meeting with Village staff, including the Planning Director, to convey its opposition to the dedication, which meeting occurred on February 13, 2020. Comp. ¶74.

5. Before that February 13, 2020 meeting, the Village Planning Director contacted the County Public Works Department asking them to confirm that the County would require the specified dedication. Comp. ¶75.

6. On April 1, 2020, the Village Public Works staff commented on the Plans Review System: "R/W dedication required along SW 131 St. . . ." Comp. ¶72.

7. On April 3, 2020, the Director of the Building and Planning Department ("Planning Director") commented on the Plans Review System that a 7.5 foot dedication of land along S.W. 131st Street was required, and that the change in property line caused by the dedication may require relocation of the proposed residence and adjustment of setbacks, lot coverage, impervious coverage, green space, and building area. Comp. ¶73. The comment further indicated that Plaintiff would have to execute a right of way deed and associated owner's affidavit and agreement. *Id.* The comment entered by the Planning Director on April 3 will be referred to as the "April 3 Comment."

8. The April 3 Comment specifically asked that Plaintiff respond to the Comment. *Id.* Plaintiff admits that it did not respond to the April 3 Comment on the Plans Review System, but instead ignored it in its resubmission of plans. Comp. ¶76.

9. In order for the Village to issue a building permit, Plaintiff must either respond to or satisfy all comments in the Plans Review System. *See* Comp. ¶¶59-61.

10.     On April 30, 2020, Plaintiff's designer, Valeria Fossi ("Fossi"), wrote to the Planning Director to seek clarification on the April 3 Comment, not to object to it. D.E. 77-5, p. 3. Fossi specifically whether an updated survey was needed and if the Village would coordinate with the surveyor to obtain the updated. *Id.*

11.     The same day that Fossi wrote the email to the Village Planning Director (April 30), the Village Planning Director and Fossi talked on the phone regarding the April 3 Comment. *See id.*

12.     On May 1, Fossi wrote to the Village Planning Director, listing the issues that were discussed in the April 30th phone call and asking the Village Planning Director to confirm that she had understood the issues correctly, but did not request to be excused from the dedication requirement.

13.     On May 14, the Village Planning Director responded confirming that his understanding of the phone call was the same as Fossi's. *Id.*

14.     Notably, Fossi did not ask if Plaintiff could be excused from the condition, and the Village Planning Director was not responding to an inquiry on whether Plaintiff could be excused. *Id.* Nor did Fossi otherwise address the comment concerning the dedication. *Id.* The limited scope of Fossi's inquiry was whether the survey had to be revised in order to continue with the review process. *Id.* Given the question, the Planning Director responded that the survey ***did not have to be revised*** because the dedication process would take a long time to complete. *Id.* "In the meantime, the Village can review the application for a building permit, provided the site plan and all required building setbacks, lot coverages, green space calculations, etc., are indicated for the property excluding the right-of-way to be dedicated." *Id.*

15.     The Village advised Plaintiff to seek relief from the County of the dedication requirement. Comp. ¶121; DE 77-8.

16.     Plaintiff was advised that the dedication is a County requirement, and that Plaintiff can seek a variance or waiver from the County concerning the condition. Comp. ¶121.

17.     Plaintiff has explicitly refused to apply to the County for an exception or waiver from the dedication requirement because of its legal conclusion that the County does not have jurisdiction. Comp. ¶121.

18.     Plaintiff has also not responded to the pending April 3 Comment on the Plans Review System (or, if it has, it has not alleged so). *See* Comp. ¶77.

19.     Plaintiff has never requested a variance or a waiver from either the Village or the County in connection with its proposal to build a single-family home on the Property. Comp. ¶35.

20.     On October 1, 2020, Plaintiff sent the Village a presuit notice pursuant to Section 70.45, Florida Statutes. Comp. ¶79.

## STANDARD OF REVIEW

To state a claim for relief, a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8) (a) (2). "While a complaint attacked by a . . . motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Factual allegations must be enough to raise a right of relief beyond a speculative level. *Id.*

Although for the purposes of a motion to dismiss the Court must take all the factual allegations in the complaint as true, the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Pure legal conclusions with no stated factual basis should be disregarded. *Id.*

Finally, a Court may take judicial notice of the local ordinances, even at the motion to dismiss stage of the proceedings.  *See* Fed. R. Evid. 201 (b) (2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Vazzo v. City of Tampa*, No. 8:17-CV-2896-T-36AAS, 2018 WL 4610998, at \*2 (M.D. Fla. Mar. 15, 2018)("Ordinances that are central to a case are judicially noticeable."); *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006)("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment . . . . Public records are among the permissible facts that a district court may consider."); *Roberto v. Shendell & Assocs., P.A.*, No. 9:17-CV-81213, 2018 WL 1367445, at \*1 (S.D. Fla. Mar. 16, 2018) ("On a motion to dismiss, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment.").

## ARGUMENT

**I.     The County Exercises Jurisdiction over Right-of-Way Widths, Configurations, and Dedications, to which the Village Is Subject.**

The "taking" on which Plaintiff's claims are based is the request that Plaintiff dedicate a portion of its Property that is adjacent to SW 131st Street for roadway purposes. Every single count in Plaintiff's Complaint hinges on Plaintiff's incorrect assumption that the County does not have jurisdiction to require the dedication from Plaintiff. If the County has jurisdiction, Plaintiff's claims fail on a number of legal basis.   Because the entire Complaint hinges on this issue, the question of whether the County has jurisdiction over the dedication requirement should be addressed first.   Although Plaintiff alleged the County does not have jurisdiction, such allegations should be disregarded because they constitute legal conclusions.   *Papsan*, 478 U.S. at 286.

A.   The County Exercises Jurisdiction over Right-of-Way Widths, Configurations, and Dedications.

The Florida Supreme Court has noted that the Miami-Dade County Home Rule Charter only provides for municipal autonomy as to purely local functions and authorizes "regulation and control by the Board on a county-wide basis of those municipal function and services that are susceptible to, and could be most effectively carried on under, a uniform plan of regulation applicable to the county as a whole." *Miami Shores Village v. Cowart*, 108 So. 2d 468, 472 (Fla. 1958).   Relying on *Cowart*, the Third District Court of Appeal explicitly held that, Miami-Dade County, "under the Home Rule Charter, . . . has undertaken, by master plan, the control of traffic **both in the unincorporated and incorporated areas of the County**." *A. L. Lewis Elementary Sch. v. Metro. Dade Cty.*, 376 So. 2d 32, 34 (Fla. 3d DCA 1979) (emphasis added).   Thus, the County Home Rule Charter grants the County exclusive jurisdiction over traffic control and enforcement issues in all incorporated and unincorporated areas of the County.   *Id.*; *see also* Chapter 2, Art. XIII, § 2-95.1 County Code (noting that the County has "exclusive jurisdiction" over traffic and roadway regulations).

It is unsurprising such exclusive jurisdiction lies with the County, because if each municipality were able to choose what their roads looked like and how they operate, there would be pandemonium in the County.   The Florida Supreme Court has noted that "[i]t is difficult to imagine a field in which a central metropolitan government could more effectively function than in that of removing the confusion, inequalities, and inequities resulting from a multiplicity of

independent municipal ordinances governing the control of traffic . . . in highly congested and contiguous metropolitan areas. *Cowart*, 108 So. 2d at 473.

Section 1.01 (A)(1) of the County Home Rule Charter vests the Board of County Commissioners ("Board") with the power to "provide and regulate arterial, toll and other roads, bridges, tunnels, and related facilities; . . . and develop and enforce master plans for control of traffic . . . ." In *Cowart*, the Florida Supreme Court recognized that the County's traffic regulation preempts and supersedes any municipal traffic regulation because a County "ordinance establishing uniformity of traffic control throughout the metropolitan area [] is specifically authorized by Section 1.01(A)(1) of the Home Rule Charter and is in accord with the intent and purpose of the constitutional authority granted by the Home Rule Amendment." 108 So. 2d at 472.

The County traffic and transportation department, whose functions are now administered by the Department of Transportation and Public Works, has exclusive jurisdiction over all matters of traffic engineering in the County (except as to State roads). Chapter 2, Art. XIII, §§2-95.1, 2-96.1, County Code. "Traffic engineering" is "that phase of engineering which deals with the planning and geometric design of streets, highways, roads, alleys and other places used for travel or parking of motor vehicles, and abutting lands, and with traffic operation thereon, as the use thereof is related to the safe, convenient, economical and feasible transportation of persons and goods." Chapter 2, Art. XIII, § 2-95.1(d), County Code. Thus, the County's jurisdiction over traffic engineering within its territorial limits is exclusive.

In addition to the authority described above, the County's Home Rule Charter gives the County authority to "[p]repare and enforce comprehensive plans for the development of the County," "[a]dopt and enforce uniform building and related technical codes and regulations *for both the incorporated and unincorporated areas of the county*," and "[s]et reasonable minimum standards for all governmental units in the county for the performance of any service or function." §1.01(A)(5), (13), (18) (emphasis added). The County's Comprehensive Development Master Plan ("CDMP"), which "acts as a constitution for all future development within the governmental boundary," *Payne v. City of Miami*, 52 So. 3d 707, 737 (Fla. 3d DCA 2010), requires the County to maintain a minimum rights of way established by the Public Works Manual and to require dedication to meet those standards. The CDMP's Transportation Element specifies, "traffic circulation needs and the goal in this Subelement are presented for the entire County, including the 34 municipalities." Objective TC-2 of the Traffic Circulation Subelement states, "the rights-

of-way and corridors needed for existing and future transportation facilities will be designated and reserved." Policy TC-2B further provides that "[t]he County shall require the dedication of appropriate share of all necessary rights-of-way from all developments at the time of development." Policy TC-2A of the Traffic Circulation Subelement requires that the County "maintain and enforce the minimum right-of-way requirements established in the *Public Works Manual* and in Chapter 33, Zoning, *Code of Miami-Dade County*, to ensure Countywide continuity of the thoroughfare system."[1]

The County Public Works Department is required to "[p]romulgate, establish and enforce minimum standards for public works construction by the publication of a public works manual." Chapter 2, Art. XIV, § 2-100(d), County Code. The Public Works Manual is the official guide for all public works throughout the County and is applicable in ***both the incorporated and unincorporated areas of the County***. §2-100(d), County Code. The County Code permits the Public Works Department Director to grant a variance from the Public Works Manual standards "where such variance will not nullify the intent and purpose of the standards to provide uniform construction requirements for the protection and safety of the general public." The process for obtaining a variance is simple and involves one County official – the Director of Public Works.

The design standards for streets are also governed by the County's subdivision regulations, set forth in Chapter 28 of the County Code. Section 28-2 of the County Code states that its provisions "regulate[] the subdivision of land in both the incorporated and unincorporated areas of the County" and are "intended to aid in the coordination of land development in the community in accordance with orderly physical patterns and to implement the master plan or parts, thereof, . . . as may have been or may hereafter be adopted." Section 28-3 similarly specifies that Chapter 28 "shall apply to and be enforced in both the incorporated and unincorporated areas" and prohibits any person or entity from "creat[ing] a subdivision of a tract of land anywhere in the County except in conformity with this chapter." In relevant part, Section 28-14 imposes design standards for streets ***within the incorporated and unincorporated areas***, in addition to standards set forth in the Public Works Manual (emphasis added):

---

[1] Section 33-133 of the County Code sets forth widths for specific right-of-way segments. Although that section is part of the County's Zoning Code, which, with certain express exceptions, applies only in the unincorporated area, the reference here specifies that those widths apply in both the incorporated and unincorporated areas.

(14)    Street right-of-way widths shall be as shown on the master
plan or in Chapter 33 of this Code **and where not so shown**
shall be not less than as follows: . . . .

(c)    Minor, for apartments and residences – Fifty (50) to
sixty (60) feet right-of-way as may be determined in
uniform standards prescribed by the County's
manual of public works construction . . . .

*Id.*, County Code (emphasis added).[2]

Section 28-11 prohibits any building permit – whether issued by the County or the
municipality – for construction on property that violates the County's subdivision requirements:

No building permit shall be issued for construction of any
improvements on a parcel that was not legally created in
compliance with these regulations except permits for a
construction trailer or sale office trailer, permanent buildings to be
used as a single family home and townhouse models, entrance
features, perimeter walls, lift stations and multi-family residential,
commercial and industrial buildings, may be issued if the
developer complies with the following requirements [set forth in
that section].

And, Section 28-12 provides an enforcement mechanism if the subdivision of land violates
Chapter 28, which applies with equal force to municipalities:

All cities and the County shall withhold all public improvement of
whatsoever nature, including the maintenance of streets and the
furnishings of sewage facilities and water service from all
subdivisions which have not been approved, and from all areas
dedicated to the public which have not been accepted, in the
manner prescribed herein.

While municipalities may provide more restrictive regulations than those promulgated by the
County, municipalities are not authorized to adopt regulations that conflict with Chapter 28.  *See*
§28-20, County Code. Thus, any exemptions or waivers of the County's fifty-foot right of way
requirement is subject to the County's jurisdiction, oversight, and approval.

---

[2]      As with the CDMP, *see supra* n.1, the reference in chapter 28 to the right-of-way widths
enumerated in section 33-133 makes the relevant sections applicable in both the incorporated and
unincorporated areas.

Finally, Section 28-19 provides a process and standards by which a property owner can request from the County a variance of the subdivision regulations, including required right-of-way dedications. Applications for a variance on a property within an incorporated portion of the County must be taken to the Board of County Commissioners. §28-19, County Code.

The Home Rule Charter, CDMP, County Code, and Public Works Manual show that the County has exclusive jurisdiction to set the required roadway dedication amounts and the required right-of-way configurations and that the County has processes to waive or modify those requirements. Plaintiff's allegation that the County has no jurisdiction should not only be disregarded because it is a legal conclusion and not a factual allegation, but also it should be disregarded because it is plainly incorrect.

B.      The Village Is Subject to the County's Jurisdiction and Authority to Require Dedication of Road Rights of Way When Issuing Building Permits.

The Village Code does not expressly require that Plaintiff dedicate property for roadway purposes to develop a single-family home. Comp. ¶67. However, as indicated in Section I.A. above, the County Code requires that the Village enforce the County's subdivision and other applicable requirements regarding road rights-of-way widths, configurations, and dedications. §§28-11, 28-14, County Code. Additionally, the Village Comprehensive Plan and Village Code mandate that the Village coordinate all development applications with other regulatory authorities that have jurisdiction over the applications. The Village, therefore, must coordinate with the County and communicate the applicable requirements to the applicant.

The Village comprehensive plan, just like the County's, act as a constitution for all future development within its boundaries. *Payne*, 52 So. 3d at 737. Thus, all future development in the Village must be consistent with the Village Comprehensive Plan. *Id.* The Land Use Element of the Village Comprehensive Plan contains Objective 1-1.4, which states that the Village "shall ensure that needed public services and facilities are developed concurrent with new development." Policy 1-1.4.3, of that same objective, states that "[p]rior to receiving a development permit, the applicant's plans must incorporate necessary . . . off-site improvements or equitable contributions in lieu thereof which are required as part of a development application pursuant to the Comprehensive Plan or any other requirement of the Village or applicable laws . . ., as exist or may hereinafter be amended."

The Village Code requires that development approvals for single-family dwellings, such as the one proposed by Plaintiff, be reviewed and acted upon by the Village administrative official. Chapter 30, Article 3, Div. 3.2(B) (1), Village Code.  The administrative official for the Village that was delegated the responsibility to review and act upon development approvals is the Village Planning Director. Comp. ¶8. The administrative official must take action on a proposed development based on the criteria for site plan approval contained in division 3.4 of the land development code.  Chapter 30, Article 3, Div. 3.2(a).  Division 3.4, subsection (h) provides, among other things that

> Except as may otherwise be required by law or administrative procedures, ***all required county***, regional, state or federal agency ***approvals*** shall be obtained prior to the submission of an application for site plan review. In cases where intergovernmental coordination efforts are incomplete, the applicant shall provide evidence of good faith efforts towards resolving intergovernmental coordination issues.

Thus, the Village is required to account for compliance with County approvals that are needed for a development. *Id.* (emphasis added).  The County exercises authority and jurisdiction to require dedication, and the Village cannot ignore or circumvent the County's authority and jurisdiction. Moreover, Plaintiff has not alleged that it met the requirement that it show compliance with the dedication comment input by Village staff into the Plans Review System or that it indicated "evidence of good faith efforts toward resolving intergovernmental coordination issues." To the contrary, Plaintiff admits it just refused to address the issue because it incorrectly concluded that the County does not have jurisdiction. Comp. ¶121, Ex. 8.

**II.     Because the Village Is Subject to the County's Requirements, Plaintiff has Failed to State a Claim Against the Village.**

Counts I-III of the Complaint require that the suit be filed against the entity imposing the condition.  *See* §70.45, Fla. Stat. (defining "prohibited exaction" as a condition imposed by a governmental entity, and stating that notice must be provided to "the relevant governmental entity"); *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994) (finding that an unconstitutional conditions claim under the Fifth Amendment of the United States Constitution is premised on the concept that the government may not require a person to give up a constitutional right in exchange for a discretionary benefit conferred by the government); *Chmielewski v. City of St. Pete Beach*,

890 F.3d 942, 949 (11th Cir. 2018) ("[b]ecause Florida follows federal takings law, we can look to cases brought under the Fifth Amendment to inform our analysis."). Instead, Plaintiff has filed suit against a mere messenger of the condition – the Village. The Village is subject to the County's requirements, and cannot unilaterally waive them.  Because the Village does not have the final decision regarding the amount or configuration of the roadway dedication at issue, the claims against the Village should be dismissed.

**III.    Plaintiff's Claims Against the Village and the County Are Not Ripe Because Neither Entity Reached a Final Decision Regarding the Dedication Requirement.**

Plaintiff's state statutory claim against the Village (Count I, pursuant to §70.45, Fla. Stat.) and Plaintiff's constitutional claims against the Village and the County (Counts II, III, and IV, pursuant to the Florida and United States Constitutions) are not ripe for the same reason: neither the Village nor the County ever reached a final decision regarding the dedication, and all counts require a final decision for the claims to be ripe.  Indeed, Plaintiff has never requested available variances or waivers from the County.  The state claim and constitutional claims will be addressed separately since the standard for each is slightly different.

   A.    Plaintiff's State Claim (Count I) Is Not Ripe Pursuant to the Plain Language of §70.45, Fla. Stat.

Section 70.45(2), Florida Statutes, provides that an action to recover damages "may not be brought until a prohibited exaction is ***actually imposed or required in writing as a final condition of approval*** for the requested use of real property" (emphasis added). Plaintiff alleges in the Complaint that its claim is ripe because, in an email attached as Exhibit 5 to the Complaint, the Village Planning Director refused to further process its permit application unless Plaintiff modified its site plan to account for the dedication. Comp. ¶108. This allegation, however, is contradicted by (1) the very exhibit Plaintiff cites to support it[3] and (2) by the allegations in the Complaint indicating that Plaintiff was advised that this was a ***County requirement*** that could be waived, and that Plaintiff should seek to be excused from the condition by the ***County***.

---

[3]     A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.  *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

First, Exhibit 5 to the Complaint does not support Plaintiff's contention that the Planning Director, via an email, refused to further process Plaintiff's application unless Plaintiff showed the dedication on its site plan.  When read in its entirety, the email attached as Exhibit 5 shows that Plaintiff is taking the Planning Director's email completely out of context to misrepresent that its claim has ripened.  The email chain begins with a question from Fossi, Plaintiff's designer, asking whether the survey for the Property has to be revised to exclude the proposed dedication in order to continue with the review process.  *Id.*  Fossi did not ask if Plaintiff could be excused from the condition or if the condition could be modified, thus the Village Planning Director was not responding to such an inquiry. *Id.* Moreover, Fossi did not otherwise address the pending comment in the Plans Review System concerning the dedication to indicate either compliance or some other response.  *Id.*  The limited scope of Fossi's inquiry was whether the survey (not the site plan) had to be revised in order to continue with the review process.  *Id.*  Given the question, the Planning Director responded that ***the survey did not have to be revised*** because the dedication process would take a long time to complete and would hold up the site plan review. *Id.*  To not hold up the site plan review, the Planning Director advised that "[i]n the meantime, the Village can review the application for a building permit, provided the site plan and all required building setbacks, lot coverages, green space calculations, etc., are indicated for the property excluding the right-of-way to be dedicated." *Id.*

At no point in this email was the Village Director asked if the site plan review process could proceed without the dedication.  Therefore, the response to Fossi's email was not a refusal to continue processing the application absent a showing of dedication.  Moreover, there is no allegation in the Complaint indicating that the Village actually denied the permit for failure to comply with the condition or that the Village otherwise stopped processing the permit.  All that is alleged is that Plaintiff ignored the comment in the plans review system. Comp. ¶77. Plaintiff should not be permitted to use an email conversation, outside of the Plans Review System, that concerns the survey for the property (not the propriety of the dedication requirement or the site plan) to essentially assert that the Planning Director ended the review process.  Given that the Village Planning Director did not actually refuse to continue processing the site plan and that there is still a pending comment in the Plans Review System, Plaintiff cannot claim that the Village has actually imposed or required the dedication as a final condition of approval.

Second, the Village advised Plaintiff that the dedication was a County requirement and that it should seek to be exempt from the requirement by the County. Comp. ¶121, Ex. 8. If the Village Planning Director's email were, in fact, a final decision, why did the Village then encourage Plaintiff to request an exemption from the County? The Village plainly has not made a final decision because (1) it was not the Village's decision (it was the County's) and (2) the Village advised Plaintiff to seek an exemption. This is not by any stretch of the imagination the actual imposition of a final condition of approval.

Section 70.45, Florida Statutes, provides a limited waiver of sovereign immunity for actions authorized under the section. §70.45 (6), Fla. Stat. ("To ensure that courts may assess damages for claims filed under this section . . . the state, for itself and its agencies or political subdivisions, waives sovereign immunity . . . Such waiver is limited only to actions brought under this section."). Statutes that waive sovereign immunity must be strictly construed in favor of the government. *See generally Bair v. City of Clearwater*, 196 So. 3d 577, 582 (Fla. 2d DCA 2016). Section 70.45(2), Florida Statutes, permits a property owner to file suit only when a prohibited exaction is "actually imposed or required in writing as a final condition of approval  . . .." The word "actually" modifies a verb to indicate that it was "in fact" taking place. *McLeod v. State*, 801 N.Y.S.2d 778 * 3 (Ct. Cl. 2005); *see also State v. Langston*, 708 S.W.2d 830, 832 (Tenn. 1986) ("the phrase 'sentence actually imposed' was meant to clarify that the potential sentence that could be imposed under statute should not be considered."). Given that the allegations in the Complaint do not show that the dedication was in fact imposed as a final condition of approval, Count I must be dismissed.

Further, even assuming that the Village Planning Director had, in fact, refused to process the permit any further until the dedication was provided to the Village, this still did not constitute a final condition, because the Plaintiff did not take the steps it needed to take to finalize the decision. The Village Code provides that a building permit applicant can seek an administrative variance of any condition imposed on a building permit. Chapter 30, Div. 3.2(e), Village Code. Administrative variances are determined by the Planning Director. *Id.* If, however, the Planning Director denies the request for a variance, the applicant can seek review of the denial from the Village zoning board. *Id.* at (e)(7). If the zoning board denies the variance, the permittee can seek review from the Village Council. Chapter 30, Div. 3.9(d), Village Code. Because Plaintiff never pursued a final written decisions from these final arbiters – the zoning board and the Village

Council – the condition was never imposed as final condition of approval as required by Florida Statutes.

> **B.** **Plaintiff's Constitutional Claims (Counts II, III, and IV) Are Not Ripe because the Defendants Have Not Made a Final Decision.**

Plaintiff's unconstitutional conditions claims (Counts II, III, and IV) under the Florida and United States Constitutions are brought pursuant to the Takings Clause. Plaintiff contends that the requirement—that it dedicate land for road purposes to obtain a permit to develop the Property—constitutes an unconstitutional condition under the Florida and United States Constitution because it requires the dedication of land without payment of just compensation as guaranteed by the Takings Clause.[4] *Koontz*, 570 U.S. at 607 (2013). All claims under the Takings Clause, however, are subject to a finality requirement, which Plaintiff has not met. *Pakdel v. City & County of San Francisco, California*, 141 S. Ct. 2226, 2228 (2021) ("When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a "final" decision."); *Alachua Land Inv'rs, LLC v. City of Gainesville*, 107 So. 3d 1154, 1158 (Fla. 1st DCA 2013) (finding that Florida has adopted the ripeness requirement).

Specifically, for a takings claim to be ripe, Plaintiff is required to show that the government has committed to a "definitive position regarding how it will apply the regulations at issue to the particular land in question." *Williamson County Reg. Planning Com'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 191 (1985), *rev'd on other grounds*, *Knick v. Township of Scott Pennsylvania*, 139 S. Ct. 2162, 2167-2168, 2179 (2019). "[T]he finality requirement is concerned with whether the initial decision maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury. . . ." *Id.* at 193. The underlying reasoning for the finality requirement is that a property owner claiming that the application of a government regulation to its property has resulted in a taking "must prove that the government 'regulation has gone too far,'" which in turn means that "the court must first 'kno[w] how far the regulation goes.'" *Pakdel*, 141 S. Ct. at 2230. A government decision is final only when "the government is committed to a position." *Id.*

---

[4] The Florida constitutional claim and the United States constitutional claim follow the same standards and are therefore analyzed together. Additionally, the Eleventh Circuit has found that "[b]ecause Florida follows federal takings law, we can look to cases brought under the Fifth Amendment to inform our analysis." *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 949 (11th Cir. 2018).

Most cases require at least the submission of "at least one 'meaningful application'" and denial of that application before a case is considered ripe.  *Alachua Land Investors*, 107 So. 3d at 1158; *Eide v. Sarasota County*, 908 F.2d 716, 726-28 (11th Cir. 1990).  Moreover, the landowner must take "reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering the development of plans for the property, ***including the opportunity to grant any variances or waivers allowed by law***."  *Palazzolo v. Rhode Island*, 533 U.S. 606, 620-21(2001) (emphasis added); *Alachua Land Investors*, 107 So. 3d at 1158.

As discussed in Section II.A above, the Village has not committed to a final position.  Plaintiff failed to adequately allege that the Village Planning Director refused to further process Plaintiff's application, and the Complaint clearly states that the Village gave Plaintiff the option of seeking a waiver of the dedication requirement from the County, which is the entity that required the dedication to begin with.  Plaintiff refused.

Moreover, as specified in Section I.A. above the County has procedures for waiving or modifying the dedication requirement depending on what type of relief Plaintiff is seeking.  Section 2-100(d) allows the Public Works Director to grant "[v]ariances from [the Public Works Manual] standards . . . where such variance will not nullify the intent and purpose of the standards to provide uniform construction requirements for the protection and safety of the general public."  Further Section 28-19 allows the County Commission to grant variances from the provisions of Chapter 28, including the minimum roadway widths found in Section 28-14(b)(14).  Plaintiff, however, has admittedly never submitted any request to the County—much less the requisite "meaningful application"—for any available relief.[5]

Unless Plaintiff is claiming that the mere condition that Plaintiff speak to the County about the dedication requirement constitutes an unconstitutional condition (which it cannot, as further explained in Section III below), then Plaintiff's claims must be dismissed because neither the Village nor the County have committed to a final position—which requires the submission and resolution of at least one meaningful application, including any available variances or waivers—as to the dedication requirement.  Part of the rationale for the finality/ripeness requirement is that

---

[5]     Additionally, even assuming that the Village could waive the County's requirements, the Village also has procedures for waivers that Plaintiff never bothered to pursue.  Comp. ¶35. And, as argued in this section, without pursuing a waiver or variance, Plaintiff's claims cannot be considered ripe.

Court's should not be answering hypothetical questions about potential, unrealized harms. *Pakdel*, 141 S. Ct. at 2230 ("The requirement ensures that a plaintiff has actually 'been injured by the Government's action' and is not prematurely suing over a hypothetical harm."). The premature claims that Plaintiff has raised are the very definition of hypothetical given the option it has to be excused from the requirement. Accordingly, Counts II -IV should be dismissed.

C. Plaintiff Has Not Adequately Plead Futility to Exempt It from the Ripeness Requirements for Counts II- IV.

"[T]he futility exception simply serves 'to protect property owners from being required to submit *multiple* applications when the manner in which the first application *was rejected* makes it clear that no project will be approved.'" *Howard W. Heck & Associates, Inc. v. United States*, 134 F.3d 1468, 1472 (Fed. Cir. 1998) (emphasis original). Generally, futility cannot be established until at least one meaningful application has been filed. *See id.*; *Tinnerman v. Palm Beach County*, 641 So.2d 523, 526 (Fla. 4th DCA 1994); *Eide*, 908 F. 2d at 726-28; *Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001) (describing as an "important principle" the concept that a landowner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of the challenged regulation.").

Plaintiff's futility allegations consist of the following:

a.    Plaintiff conclusorily alleges "futility of seeking further administrative relief (if any exists)" without substantiating factual allegations. Comp. ¶¶24, 26.

b.    Plaintiff alleges that the County's intervention in the case to assert its jurisdiction demonstrates "futility in any available administrative path to seek exception, variance or waiver from the County." Comp. ¶122. Plaintiff makes this allegation despite the County's filings—which precipitated the operative complaint—expressly identifying available variance processes. *See, e.g.*, DE 40 (County Mot. to Intervene) ¶¶6, 19; DE 66-1 (County Answer and Defenses in support of Mot. to Intervene) ¶¶11, 24, 27-28.

c.    The Village Planning Director's Email, attached as Exhibit 5, which answered Plaintiff's question regarding whether the survey needs to be revised. Comp. ¶148.

d.    The Village's refusal to rescind the comment on the dedication requirement despite receiving Plaintiff's presuit notice (although the Village has no authority to rescind the County's requirements). Comp. ¶145.

Although futility, if properly alleged, can excuse a plaintiff from the obtaining a final decision from a permitting authority, "the mere possibility, or even the probability, that the responsible agency may deny the permit should not be enough to trigger the excuse." *Gilbert v. City of Cambridge*, 932 F.2d 51, 61 (1st Cir. 1991). "To come within the exception, a sort of inevitability is required: the prospect of refusal must be certain (or nearly so)." *Id.* Unsubstantiated conclusions that are not sufficiently backed by allegations of fact, cannot support a claim of futility. *Id.* Plaintiff's allegations are precisely the sort of conclusory, unsubstantiated, and speculative assertions that cannot adequately establish futility. Thus, the allegations are insufficient to excuse Plaintiff from the ripeness requirement.

**IV.    If the Plaintiff's Claims Ripened by Virtue of the Village Planning Director's Mere Written Comment, as Plaintiff alleges, Count I of Plaintiff's Complaint Must Be Dismissed Because Plaintiff's Statutory Presuit Notice Was Untimely.**

Plaintiff alleges that the Planning Director's mere written comment in an email—indeed, an email sent outside of the Village's official system for providing comments on permit applications (i.e., the Plans Review System)—"actually imposed" the dedication requirement as a final condition of approval. One of the many obvious flaws in Plaintiff's contention that this email ripened its claim is that Plaintiff alleges three previous instances in which the Village advised Plaintiff of the dedication requirement via the Plans Review System. Plaintiff does not explain why the previous written comments do not constitute a final decision on the dedication, but the email from the Planning Director does.

Plaintiff's own allegations show that, before the Planning Director's May 14, 2020 email (DE 77-5), the Village communicated the dedication requirement to Plaintiff on three earlier instances:

1.    **December 24, 2019:** Village staff input a comment in the Plans Review System indicating that the possibility of a road dedication must be researched (Comp. ¶71);
2.    **April 1, 2020:** a Village staff member input a comment in the Plans Review System definitively stating that right of way dedication is required along S.W. 131 Street" (Compl. ¶72); and
3.    **April 3, 2020:** the Village Planning Director entered a comment in the Plans Review System stating that a 7.5 foot dedication of land along S.W. 131st Street was required, and that the change in the Property line would require redesigning aspects of the architectural plans to accommodate the dedication (Comp. ¶73).

The April 3 Comment in the plans review system was clear and unequivocal: a dedication was required that would result in significant changes to the proposed site plan. In fact, the April 3

Comment does not differ in any material sense from the Village Planning Director's email. The April 3 comment was input by the Planning Director, it advised Plaintiff of the full extent of the dedication required (7.5 feet), and it required redesign of the site plan to accommodate the dedication.  This is exactly what Exhibit 5 does. Yet Plaintiff advocates that Exhibit 5, which merely reiterated the April 3 comment, "actually imposed or required the condition in writing as a final condition of approval."  Plaintiff's choice of the purportedly ripening event is not arbitrary: it reflects Plaintiff purposeful attempt to avoid its failure to provide timely presuit notice under section 70.45(3).

Section 70.45(3) requires that a property owner who seeks to make a claim under the statute to send a presuit notice to the government "no later than 180 days after imposition of the prohibited exaction . . . ."  Plaintiff sent its notice on October 2, 2020. Comp. ¶73. If the April 3 comment "actually imposed" the dedication requirement, Plaintiff's presuit notice had to be sent on or before September 30, 2020. If a mere staff comment could ripen the statutory claim, Plaintiff's presuit notice would be untimely, and Count I would be time-barred.  Because the April 3 review comment, which clearly stated that dedication was required and even specified the extent of the required dedication (Comp. ¶73) would result in the claim being barred, Plaintiff proposes that a different event—the Planning Director's later email, which occurred outside the formal permitting review system—"actually imposed" the condition, even though the earlier comment within the formal system communicated the same requirement.  Plaintiff cannot choose which event ripens its claim.  Accordingly, if Plaintiff's claim is ripe, then Count I is time-barred because the Planning Director's first written comment regarding the dedication requirement was on April 3, and the presuit notice is, therefore, untimely.

**V.      Plaintiff Failed, As a Matter of Law to Allege the Imposition of a Prohibited Exaction (Count I) or Unconstitutional Condition (Counts II-IV), because Plaintiff Was Given One Option that Does Not Constitute Either.**

The Village told Plaintiff that the dedication was a County requirement and that Plaintiff should speak to the County about waiving the requirement.  Comp. ¶121, Ex. 8.  Plaintiff clearly alleges this fact.  "[S]o long as a permitting authority offers the landowner at least one alternative that would satisfy [the essential nexus and rough proportionality test], the landowner has not been subjected to an unconstitutional condition." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 611 (2013).  The mere requirement that Plaintiff speak to the County about the dedication

requirement does not, as a matter of law, constitute a prohibited exaction or unconstitutional condition.  Accordingly, the Complaint should be dismissed for failure to state a claim.

A.     Plaintiff Failed to State a Claim under Section 70.45, Florida Statutes.

Count I of the Complaint is based on Section 70.45, Fla. Stat., which allows a property owner to file suit and recover damages for a prohibited exaction.  A "prohibited exaction" is "any condition imposed by a governmental entity on a property owner's proposed use of real property that lacks an essential nexus to a legitimate public purpose and is not roughly proportionate to the impacts of the proposed use that the governmental entity seeks to avoid, minimize, or mitigate." The Act defines a prohibited exaction consistent with the U.S. Supreme Court definition for an unconstitutional condition because the Act's intent is to create a state cause of action for unconstitutional conditions.  Fla. H.R. Final Bill Analysis, CS for CS for CS for HB 383 (June 17, 2015),   https://trackbill.com/s3/bills/FL/2021/HB/383/analyses/bill-analysis-early-learning-and-elementary-education-subcommittee-post-meeting.pdf .

No Florida cases to date interpret the Act, which was enacted in 2015.  Thus, federal cases can be used as persuasive authority for interpreting the Act.  *See Gleneagle Ship Mgmt. Co. v. Leondakos*, 602 So. 2d 1282, 1283–84 (Fla. 1992) ("Although the Federal Rules of Civil Procedure and the Florida Rules of Civil Procedure differ in some respects, "the objective in promulgating the Florida rules has been to harmonize our rules with the federal rules" . .  Thus, we look to the federal rules and decisions for guidance in interpreting Florida Civil Procedure Rules."); *Chmielewski*, 890 F.3d 9 at 949 ("Because Florida follows federal takings law, we can look to cases brought under the Fifth Amendment to inform our analysis.").

The United States Supreme Court has found in "unconstitutional conditions" cases that "so long as a permitting authority offers the landowner at least one alternative that would satisfy [the essential nexus and rough proportionality test], the landowner has not been subjected to an unconstitutional condition." *Koontz*, 570 U.S. at 611.  Plaintiff clearly alleged that the Village gave it the option of seeking to be exempt from the condition altogether by obtaining a waiver from the County, which exercises jurisdiction over the requirement. Thus, the Village has not exacted anything from Plaintiff. Moreover, the whole reason that a "prohibited exaction" is compensable is that "[e]xtortionate demands for property in the land-use permitting context run afoul of the Takings Clause not because they take property but because they impermissibly burden the right not to have property taken without just compensation." *Id.* at 607. In other words, to constitute an

unconstitutional condition, the permit condition must require that a property owner give up property in exchange for a permit without payment of just compensation. *See id.* Unlike *Koontz*, in which the applicant's only options were dedication, payment of money, or approval of a less ambitious project, *see id.* at 611-12, the Village's request that Plaintiff pursue an appropriate process to seek relief from the dedication requirement gives Plaintiff an option pursuant to which it would give up no property interest.[6] This cannot as matter of law constitute a prohibited exaction. Plaintiff has therefore failed to state a claim, and the Complaint should be dismissed.

     B.   <u>Plaintiff Failed to State a Claim under the Florida and United States Constitutions.</u>

For the same reasons cited in section III.A. above, as a matter of law, the Village's suggestion that Plaintiff seek a waiver from the County is not an unconstitutional condition. Therefore, Plaintiff failed to state a claim, and Counts II and III should be dismissed.

**CONCLUSION**

Plaintiff filed this lawsuit before any dedication was actually imposed as a final condition of approval for its permit application. Moreover, as Plaintiff's Complaint makes clear, the Village provided Plaintiff with an alternative (to seek a waiver from the County, which exercises jurisdiction over the applicable requirements) that did not constitute a prohibited exaction or an unconstitutional condition. But Plaintiff has failed to pursue—much less file a meaningful application in support of—the available waiver and variance processes. Accordingly, the Second Amended Complaint presents precisely the type of unripe and hypothetical claims that the Supreme Court protects courts from reviewing.

WHEREFORE, Defendants, Village of Pinecrest and Miami-Dade County, respectfully requests that the Court dismiss the Second Amended Complaint and grant the Defendants such other and further relief as the Court deems just and property, including attorneys' fees pursuant to section 70.45, Florida Statutes and 42 U.S.C. §1988, if the Complaint is dismissed with prejudice.

---

[6]    As explained above, Plaintiff's conclusory and unsubstantiated "futility" claims cannot change the meaningfulness of this option.

Weiss Serota Helfman Cole & Bierman, P.L.
21

Dated: July 6, 2022

Respectfully Submitted,

<table>
<tr>
<td>

GERALDINE BONZON-KEENAN
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Telephone: (305) 375-5151
Facsimile: (305) 375-5634
By: /s/ Dennis A. Kerbel
Dennis A. Kerbel
Assistant County Attorney
Fla. Bar No. 610429
E-mail: dkerbel@miamidade.gov
olga1@miamidade.gov
Bruce Libhaber
Assistant County Attorney
Fla. Bar No. 121339
E-mail: bruce2@miamidade.gov

</td>
<td>

**WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.**
*Counsel for Village of Pinecrest*
2525 Ponce de Leon Blvd, Suite 700
Coral Gables, Florida 33134
Telephone: (305) 854-0800
Telecopier: (305) 854-2323
By: */s/Alicia Gonzalez*
ERIC L. STETTIN
Florida Bar No. 0831697
Primary email: estettin@wsh-law.com
Secondary email: skosto@wsh-law.com
ALICIA GONZALEZ
Florida Bar No. 75342
agonzalez@wsh-law.com (primary)
ozuniga@wsh-law.com secondary)

</td>
</tr>
</table>

## CERTIFICATE OF SERVICE

I certify that the foregoing was electronically filed in this action on July 6, 2022, through

CM/ECF and that the Portal was used as a means to serve the e-filed document upon all counsel

and parties on the e-service list associated with this action.

**WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.**
*Counsel for Village of Pinecrest*
2525 Ponce de Leon Blvd, Suite 700
Coral Gables, Florida 33134
Telephone: (305) 854-0800
Telecopier: (305) 854-2323

By: */s/Alicia Gonzalez*
ERIC L. STETTIN
Florida Bar No. 0831697
Primary email: estettin@wsh-law.com
Secondary email: skosto@wsh-law.com
ALICIA GONZALEZ
Florida Bar No. 75342
agonzalez@wsh-law.com (primary)
ozuniga@wsh-law.com (secondary)