**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-cv-22819-ALTMAN/Reid**

**MEGLADON, INC.**,

*Plaintiff*,

*v.*

**VILLAGE OF PINECREST**,

*Defendant*.
_____________________________________/

## ORDER

After our jury rendered its verdict in this case, *see* Jury Verdict [ECF No. 315], we entered final judgment in favor of the Defendant—the Village of Pinecrest (the "Village")—as to Count I of the Second Amended Complaint (the "SAC") [ECF No. 77]. *See* Final Judgment [ECF No. 325]. We also entered judgment for the Plaintiff, Megladon, Inc. ("Megladon"), as to Count II of the SAC, awarding Megladon $409,437.50 in damages. The Village now seeks judgment as a matter of law—or else a new trial. *See* Renewed Motion for Judgment as a Matter of Law (the "Motion") [ECF No. 328]. After careful review, we **DENY** the Motion.

### THE LAW

"When . . . ruling on a motion for judgment as a matter of law," courts "consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party." *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1360 (11th Cir. 2010) (cleaned up); *see also McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) ("The standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion under 50(a)." (cleaned up)). "Where no legally sufficient evidentiary basis exists for a reasonable jury to find for that party on that issue, judgment as

a matter of law is proper." *Moore v. Cecil*, 174 F.4th 862, 877–78 (11th Cir. 2026) (cleaned up). "But if there is substantial conflict in the evidence, such that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion must be denied." *Henderson v. Ford Motor Co.*, 72 F.4th 1237, 1244 (11th Cir. 2023) (cleaned up). "That standard is heavily weighted in favor of preserving the jury's verdict." *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1226 (11th Cir. 2012); *see also Edwards v. Grubbs*, 179 F.4th 909, 929 (11th Cir. 2026) ("Ultimately, we will disturb the jury's verdict only when there is no material conflict as to the evidence and where no reasonable juror could agree to the verdict." (cleaned up)).

"A losing party may also move for a new trial under Rule 59 on the grounds that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair, and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *McGinnis*, 817 F.3d at 1254 (cleaned up). "Thus, under Rule 59(a), a district court may, in its discretion, grant a new trial if[,] in the court's opinion, the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Ibid.* (cleaned up).

## ANALYSIS

At trial, the Village moved for judgment as a matter of law. *See* Motion at 1. It now renews that request, arguing that Megladon's evidence was "insufficient as a matter of law to impose *Monell* liability." *Id.* at 3. In the alternative, the Village seeks a new trial on the basis that "improper jury instructions and admission of evidence severely prejudice[d] the Village[.]" *Id.* at 12. We reject those challenges in turn.

### I. The Renewed Motion for Judgment as a Matter of Law

"Under the *Monell* line of cases, a municipality does not incur Section 1983 liability solely because of its employer-employee relationship with an alleged wrongdoer." *Huggins v. Sch. Dist. of*

*Manatee Cnty.*, 151 F.4th 1268, 1285 (11th Cir. 2025); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978). Instead, "a municipality may be held liable only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1263 (11th Cir. 2010) (cleaned up). "A plaintiff can establish municipal liability under *Monell* in three ways: (1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Tundidor v. Hernandez*, 2026 WL 1800959, at *4 (S.D. Fla. June 23, 2026) (Altman, J.) (quotation marks omitted). Here, our Plaintiff proceeded to trial under the second—*i.e.*, custom-based—approach. *See Megladon, Inc. v. Vill. of Pinecrest*, 2025 WL 1517181, at *36 (S.D. Fla. May 28, 2025) (Altman, J.) ("Two questions of fact thus remain: (1) the date on which the Village made its final decision to impose the dedication; and (2) the extent of the Village Council's involvement in perpetuating the Village's custom of requiring dedication.").[1]

"A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007). "For a custom or policy theory to be actionable, the custom or policy must be so well-settled and pervasive that it assumes the force of law; it must be persistent and widespread, so the county had either actual or constructive knowledge of it." *Smothers v. Childers*, 159 F.4th 922, 931 (11th Cir. 2025) (cleaned up). "[N]ormally, random acts or isolated incidents are insufficient to establish a custom or policy," which "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of

[1] Our summary-judgment order can also be found on the docket at [ECF No. 235].

the municipality." *Ibid.* (cleaned up); *see also Doral 10, LLC v. City of Doral*, 2023 WL 6891270, at *3 (11th Cir. Oct. 19, 2023) ("[T]he plaintiff must show the custom is a longstanding and widespread practice that is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." (cleaned up)).

In arguing that Megladon's evidence at trial was "insufficient as a matter of law to impose *Monell* liability," the Village takes issue with three types of evidence Megladon presented at trial: *one*, statements made by individual members of the Village Council; *two*, examples of other dedication demands; and *three*, the Village Council's executive sessions. Motion at 3; *see id.* at 3–10. The challenge fails on all counts.

We'll start with the statements made by Village councilmembers. The jury's reliance on those statements was "improper," the Village insists, because "an individual council member cannot establish policy or a position for the municipality." *Id.* at 7. But that argument, as Megladon notes, "confuse[s]" an "unofficial custom" theory of liability "with a separate theory [that Megladon] did not pursue"—a ratification theory. Response in Opposition to Post-Trial Motions (the "Response") [ECF No. 343] at 4. And those two theories make different demands.

"[A] municipality can be held liable on the basis of *ratification* when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (cleaned up and emphasis added). "When plaintiffs are relying not on a pattern of unconstitutional conduct, but on a single incident, they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision *and the decision's basis* before a court can hold the government liable on a ratification theory." *Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015) (cleaned up & emphasis added).

In contrast, a custom-based theory takes aim at actions that prove "so 'longstanding and widespread' that we can understand [them] to be *implicitly authorized* by policymakers[.]" *Bridges v. Poe*, 155 F.4th 1302, 1314 (11th Cir. 2025) (emphasis added). When those actions become "well-settled and pervasive," in other words, we impute "either actual *or constructive knowledge* of it," *Smothers*, 159 F.4th at 931 (emphasis added), even though "the custom need not receive formal approval," *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

The Village blurs those distinct theories. It attempts to import the same-motive requirement to the custom context, maintaining that a "statement[ ] of an individual councilmember is not indicative of what the other Village Councilmembers believed or shared." Motion at 9; *see also id.* at 8 ("Yet, there was no evidence introduced that the Village Council as a whole, or *any* other individual council member, adopted these improper motives."). But it offers no caselaw supporting that view. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."). And it ignores the weight of precedent recognizing that "a municipality may be liable for its custom *irrespective of whether official policy-makers had actual knowledge* of the practice at issue." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1234 (9th Cir. 2011) (cleaned up & emphasis added); *see, e.g.*, *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (explaining that *Monell* liability can be imposed "if a municipal custom, policy, or usage would be *inferred* from [the] evidence" (emphasis added)); *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987) ("Constructive knowledge may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them."); *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808–09 (5th Cir. 2017) ("Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged *public discussion*

or of a high degree of publicity." (cleaned up & emphasis added)); *Winkler v. Madison Cnty.*, 893 F.3d 877, 902 (6th Cir. 2018) (explaining that a "custom" requires showing "*tacit approval* of the unconstitutional conduct" (cleaned up & emphasis added)).

At bottom, the Village believes that "a municipality . . . cannot be held liable for the statements of one councilmember pursuant to *Monell* when that person is not a final policymaker[.]" Reply in Support of Motion (the "Reply") [ECF No. 345] at 3 (cleaned up). But that belief misapprehends the fact that "municipal liability may be based upon (1) an action taken or policy made by an official responsible for making final policy in that area of the city's business; *or* (2) a practice or custom that is so pervasive, as to be the *functional equivalent* of a policy adopted by the final policymaker." *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994) (emphases added). That a councilmember alone cannot bind the Village Council thus has no bearing on whether these statements reveal that the Village Council countenances unconstitutional conduct.

That's the rub here. Megladon presented evidence of councilmember statements about "'giving the city land for free' in the context of a Council vote to accept a dedication from a building permitting applicant who was neither platting nor subdividing." Response at 5 (quoting Trial Exhibit 3 [ECF No. 319-3] and Trial Exhibit 37 [ECF No. 319-37]). It also presented statements made by the Village's Planning Director and by the Village's Public Works Director "informing the Village Council that the Village required applicants for redevelopment or remodeling permits to dedicate private property so the Village could achieve ideal right-of-way widths even if the applicants did not propose platting or subdivision of the property." *Ibid.* Those statements, as Megladon says, "established that subordinate Village officials had adopted the custom of requiring dedication" and that the Village Council "knew or should have known about the custom and acquiesced in it." *Id.* at 7. The jury agreed, and we cannot say that "a reasonable jury would not have a legally sufficient evidentiary basis" to reach that conclusion. FED. R. CIV. P. 50(a)(1).

The Village fares no better in its similar-incident challenge. At trial, Megladon offered evidence of "at least four . . . other demands for dedication of private property in connection with redevelopment and remodeling permit applications outside the platting or subdivision context." Response at 7 (emphasis added). It identified: (1) "the SW 92nd Street dedication in connection with the construction of a single-family home to which Bob Liu ('tan suit guy') testified under oath at the Village Council meeting on December 8, 2015"; (2) "the remodeling of the single-family home at 8380 SW 134th Street"; (3) "the redevelopment of 5750 SW 88th Street, the Cruz parcel that was the subject of the Village Council's discussion at its meeting on May 12, 2020, and the affidavit the Village sent Megladon in an attempt to coerce its submission to the dedication demand, with a single-family home"; and (4) "the redevelopment of 9675 SW 69th Street with a single-family home," which was the subject of the Village Council's meeting on March 14, 2023. *Ibid.*[2]

The Village discounts the first and second instances, arguing that "a dedication can only be accepted through a formal vote by the Village Council." Motion at 3; *see also ibid.* ("[A]ny accepted dedications or a purported custom by the Village imposing and accepting dedications would be evidenced by underlying resolutions by the Village Council."). And while it concedes that the third and fourth instances count as "similar incidents," *id.* at 5, it insists that those instances "are not close in time to evidence a custom or practice," given that the "jury found that April 3, 2020[,] was the date that the Village imposed the dedication condition on Megladon," *id.* at 6, and that "there was no resolution by the Village Council accepting such . . . dedication[s]," Reply at 3; *see also* Motion at 6 ("Despite Megladon's attempt to use these other incidents, it did not corroborate such assertions with any Village resolutions accepting these dedications. Nor did Megladon contradict the Village

[2] The Village doesn't dispute that Megladon offered this evidence at trial. *See* Trial Exhibit 4 [ECF No. 319-4]; Trial Exhibit 44 [ECF No. 319-44]; Trial Exhibit 45 [ECF No. 319-45]; Trial Exhibits No. 290–91 [ECF Nos. 290–91]; Trial Exhibits 294–301 [ECF Nos. 294–301].

Manager's testimony that the only way the Village can accept a dedication is through resolution passed by the Village Council.").

But these arguments rely on the premise we rejected above. We can attribute a custom to a municipality even when the relevant conduct isn't *formally sanctioned*. *See, e.g.*, *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992) ("The policy or custom used to anchor liability need not be contained in an explicitly adopted rule or regulation."). And for good reason: "[A] county rarely will have an officially-adopted policy of permitting a particular constitutional violation[.]" *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1330 (11th Cir. 2003) (en banc) (cleaned up); *see also ibid.* (explaining that, for that very reason, "most plaintiffs" must resort to a custom-based approach to *Monell*). Excluding any of the four instances here would therefore thwart the animating purpose of the custom doctrine. *See Nashville, C. & St. L. Ry. v. Browning*, 310 U.S. 362, 369 (1940) ("It would be a narrow conception of jurisprudence to confine the notion of 'laws' to what is found written on the statute books, and to disregard the gloss which life has written upon it."); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167–68 (1970) ("Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law.").

Nor do we see a need to exclude instances that post-date the dedication demand. *See* February 24, 2026 Calendar Call Transcript (the "Calendar Call Transcript") [ECF No. 288] at 54 ("There's no categorical bar on evidence proving a custom just because the evidence postdates the incident in question."). As this Circuit—and others—have recognized, "post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right." *Salvato*, 790 F.3d at 1297 (cleaned up); *see also Bordanaro v. McLeod*, 871 F.2d 1151, 1166–67 (1st Cir. 1989) ("The [Supreme] Court has never held that inferences about what customs or policies existed in a city before an event could not be drawn from subsequent actions."); *Henry v. Cnty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997), *opinion amended on denial of reh'g*, 137 F.3d 1372 (9th Cir. 1998) ("[P]ost-event

evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry."); *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) ("[T]he subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy.").

That leaves only the Village's challenge to the executive-session evidence. That evidence, the Village tells us, "cannot support custom or practice" and "instead support[s] a ratification theory, which had previously been dismissed from consideration." Motion at 9. But it offers *no* argument for this proposition. *See ShowMojo, LLC v. Threhshold Tech., LLC*, 2026 WL 2718355, at *8 (S.D. Fla. Sept. 15, 2026) (Altman, J.) ("The failure to make arguments and cite authorities in support of an issue waives it." (cleaned up)). And its belief that Megladon never introduced evidence establishing that "the Village Council ratified the underlying basis for Mr. Olmstead's decision as to Megladon's property," *id.* at 10, runs headlong into our now-familiar problem: "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

As a last resort, the Village contends that, "[a]t best, the decision regarding Megladon's application (and the imposition of the condition) provides one additional incident" for the purposes of proving a custom under *Monell*. *Ibid.* That brings the total count to (at least) five instances between 2015 and 2023. And we see no reason why that number—in conjunction with the statements above—cannot support a reasonable jury's verdict.[3]

[3] Courts generally eschew "bright-line rules" for determining the number of instances that may be required before a court canthat *Monell* liability. *Hildreth v. Butler*, 960 F.3d 420, 427 (7th Cir. 2020); *but see ibid.* ("[W]e have acknowledged that the frequency of conduct necessary to impose *Monell* liability must be more than three."). That's because the "similarity" and "specificity" of the relevant events impact the prior-incident analysis. *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017), *as revised* (Mar. 31, 2017). Still, "a single incident of unconstitutional activity" *can* suffice if "the challenged policy

## II. The Motion for a New Trial

In the alternative, the Village seeks a new trial because of "improper jury instructions and admission of evidence." Motion at 12. It advances two main arguments in support of that theory. Neither prevails.

*First*, the Village maintains that our jury instructions "misled" the jury because the instructions neither explained that "one councilmember's statements . . . are not enough to establish a custom . . . on behalf of the Village" *nor* required Megladon to "show that the other councilmembers, other than the speaker of the statement, shared the same motive or agreed to such a statement." Motion at 11. That challenge suffers from the same flaw that doomed the Village's primary arguments. *See supra* at 5–8. We won't rehash it here.

*Second*, the Village objects to the admission of the executive sessions—for two reasons: *one*, because "executive sessions are specifically exempt from public meeting requirements under Florida[ ] . . . law," *Id.* at 12; *two*, because "the executive sessions support a ratification theory," *ibid.* But the latter fails for the reason we've described above. *See supra* at 9. And the former recycles the argument we rejected before trial. *See* Calendar Call Transcript at 64 ("We also deny the request to filter all content from executive sessions. The [P]laintiff explains that it does not seek to introduce

---

itself is unconstitutional." *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1299 (11th Cir. 2023); *see also Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) ("Where an official policy or practice is unconstitutional on its face, it necessarily follows that a policymaker was not only aware of the specific policy, but was also aware that a constitutional violation will most likely occur."); *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377–78 (7th Cir. 2020) ("The most straightforward *Monell* claims are those in which a plaintiff alleges that an affirmative municipal action is itself unconstitutional. In those cases, inferences of culpability and causation are easy, for they follow directly from the municipality's intentional decision to adopt the unconstitutional policy or custom or to take particular action." (cleaned up)).

Here, Megladon presented evidence that the Village Council itself *acknowledged* having an unconstitutional custom. *See, e.g.*, Motion at 11 (noting that Megladon presented evidence that "the Village met on several occasions to discuss the instant litigation but yet did nothing to reverse its position or reprimand Mr. Olmstead"). So, even without the five aforementioned incidents, we cannot say that there was "[in]sufficient evidence in the trial record to support the jury's verdict[.]" *Dupree v. Younger*, 598 U.S. 729, 735 (2023) (cleaned up).

testimony from executive sessions which it deems unavailable due to public records exemption and would be subject to the attorney-client privilege and, instead, only wants to reference public meeting notices. And it says that those notices show that the council—by virtue of convening sessions solely about this case—had specific knowledge of Director Olmsted's decision to impose a right-of-way exaction condition and didn't reprimand or alter or amend or change that practice in any way."). We therefore see no reason to grant a new trial. *See Watts v. Great Atl. & Pac. Tea Co.*, 842 F.2d 307, 310 (11th Cir. 1988) ("In ruling on a motion for new trial, the trial judge is permitted to weigh the evidence, but to grant the motion he must find the verdict contrary to the great, not merely the greater, weight of the evidence.").

## CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** that the Plaintiff's Renewed Motion for Judgment as a Matter of Law [ECF No. 328] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on October 2, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record